**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SYMBOLIC AVIATION, INC., a California corporation; WEST COAST ACQUISITIONS, LLC, a California limited liability company; MARC CHASE, an individual; GRAHAM COX, an individual; and VICKI COX, an individual,<br><br>                                         Plaintiffs,<br>        vs.<br>PNCEF, LLC, an Indiana limited liability company, dba PNC Aviation Finance,<br><br>                                         Defendant.<br>_____<br>PNCEF, LLC, an Indiana limited liability company, dba PNC Aviation Finance,<br><br>                                         Counterclaimant,<br>        vs.<br>SYMBOLIC AVIATION, INC., a California corporation; WEST COAST ACQUISITIONS, LLC, a California limited liability company; MARC CHASE, an individual; GRAHAM COX, an individual; and VICKI COX, an individual,<br><br>                                         Counterdefendants. | CASE NO. 10cv1228-WQH-AJB<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss filed by Defendant/ Counterclaimant PNCEF, LLC ("Defendant" or "PNC"). (Doc. # 5).

**I.     Background**

On June 9, 2010, Plaintiffs/Counterdefendants ("Plaintiffs") initiated this action by

filing a Complaint in this Court. (Doc. # 1).

### A. Allegations of the Complaint

On January 26, 2007, Plaintiff Symbolic Aviation, Inc. ("Symbolic") and National City Commercial Capital Company, LLC ("National City") entered into a "Master Aircraft Mortgage and Security Agreement" ("Mortgage"). *Id.* ¶ 10. On June 19, 2008, pursuant to the terms of the Mortgage, National City loaned $5,400,000 to Symbolic to purchase a "Lear 45-103" aircraft. *Id.* "The Mortgage had a maturity date of May 30, 2009, when the remaining principal balance on Lear 45-103 would become due unless the parties could come to an alternative agreement." Id. ¶ 13.

"Around July 2009, National City's rights and obligations under the Mortgage were sold to PNC, without Symbolic's knowledge or consent." *Id.* ¶ 12.

"Recognizing that throughout the dealings Symbolic had made timely payments despite the economic downturn, PNC agreed that the maturity date should be extended for the benefit of all parties. The parties negotiated, and entered into an agreement on November 11, 2009 calling for monthly payments of $12,000 to be applied against interest in lieu of the principal balance ('Maturity Date Extension Agreement')." *Id.* ¶ 13. Plaintiffs Marc Chase, Graham Cox, Vicki Cox and West Coast Acquisitions, LLC are guarantors to the Maturity Date Extension Agreement. "The Maturity Date Extension Agreement extended the maturity date to May 31, 2010, a date just six months outside of the negotiation time frame. As Symbolic would not benefit from such a short extension, PNC was given the power to extend the maturity date two additional six month periods, with the understanding that the extensions would be exercised if Symbolic upheld their obligations under the Maturity Date Extension Agreement." *Id.* ¶ 14. "When negotiating the Maturity Date Extension Agreement, Symbolic and Guarantor-Plaintiffs relied on representations made by PNC that extensions of the maturity date would continue to be granted as necessary in the future." *Id.* ¶ 18.

"Symbolic has made all payments due on Lear 45-103 since June 2008.... All payments made to National City and PNC for the Lear 45-103 total $416,417.92. Symbolic has upheld all of its obligations under the Maturity Date Extension Agreement." *Id.* ¶ 17. "In good faith,

1  Symbolic tendered its regular payment of $12,000 to PNC on June 7, 2010 despite the
2  expiration of the last extension agreement on May 31, 2010, with the belief that PNC would
3  exercise their power to extend the maturity date under the Maturity Date Extension
4  Agreement." *Id*. ¶ 19. "In good faith, Symbolic had attempted to negotiate the regular
5  extension, however, PNC has refused to extend the maturity date instead demanding new
6  exorbitant payments completely out of line with the prior dealings between the parties." *Id*.
7  ¶ 20.

8        The Complaint alleges two claims for relief: (1) breach of covenant of good faith and
9  fair dealing; and (2) violation of California Business and Professions Code § 17200.

10        **B.  Judicially-Noticed Documents**[1]

11        The Mortgage, Mortgage Supplement and accompanying Promissory Note were entered
12  into on May 30, 2008, and these documents state that National City loaned $5,500,000 to
13  Symbolic to purchase the Lear 45-103 aircraft. (Pascarella Decl., Ex. B at 39, 42, Ex. C at 78,
14  Doc. # 5-1). According to the Promissory Note, the original maturity date of the loan was
15  August 30, 2008. (*Id.*, Ex. C at 78). The Mortgage provides that it "shall be construed and
16  enforced in accordance with and governed by the law of Ohio applicable to contracts made and
17  to be performed entirely within such State." (*Id.*, Ex. A at 25; *see also* Mortgage Supplement,
18  *id*., Ex. B at 39 (same)).

19        On August 30, 2008, the parties entered into an Amended and Restated Promissory
20  Note which extended the maturity date of the loan from August 30, 2008 to May 30, 2009.
21  (*Id*., Ex. D at 81).

22        On November 11, 2009, the parties entered into the Maturity Date Extension
23  Agreement. (Compl., Ex. A, Doc. # 1). The Maturity Date Extension Agreement provides that
24  "Lender, in its sole and absolute discretion, will have the option ... to extend the maturity date

---

[1] The Court takes judicial notice of the Maturity Date Extension Agreement, which is attached to the Complaint, and the Mortgage, Mortgage Supplement, Promissory Note, and Amended and Restated Promissory Note, which are attached to the Motion to Dismiss and were referenced in the Complaint and/or the Maturity Date Extension Agreement. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). No party disputes the authenticity of these documents.

for two (2) additional consecutive periods of six (6) months...." (*Id*. at 2, § 2(b)). The Maturity Date Extension Agreement provides that the loan documents and the Maturity Date Extension Agreement "constitute the entire agreement between the parties" and that the Maturity Date Extension Agreement "supersedes all previous negotiations and discussions between the parties." (*Id*. at 8, § 13).

**C.    Procedural History**

On June 29, 2010, Defendant filed the Motion to Dismiss. (Doc. # 5). Defendant moves for the dismissal of the entire Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

On July 7, 2010, Defendant filed a Counterclaim against each Plaintiff. (Doc. # 9). Defendant alleges that Symbolic is in default under the terms of the loan documents because Symbolic has failed to pay the full indebtedness due under the Amended and Restated Promissory Note. Defendant alleges that "[t]he total amount due and outstanding as of May 31, 2010 is $5,400,000.00 in principal, plus accrued interest, late fees and attorneys fees and costs incurred and unpaid, and interest, fees, costs and fees that continue to accrue thereafter." (*Id*. ¶ 32). Defendant alleges that, despite demand, Plaintiffs have failed to pay the amounts due and owing, and Symbolic has refused to surrender possession of the aircraft. The Counterclaim alleges six causes of action: (1) injunctive relief; (2) specific performance; (3) writ of attachment; (4) claim and delivery; (5) breach of contract; and (6) breach of guaranty.

On July 19, 2010, Plaintiffs filed an opposition to the Motion to Dismiss. (Doc. # 10). On July 23, 2010, Defendant filed a reply in support of the Motion to Dismiss. (Doc. # 11).

**II.    Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Courts may "consider ... matters of judicial notice without converting the motion to dismiss into a motion for summary judgment." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

2003).

To sufficiently state a claim to relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009). "[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

**III.    Contentions of the Parties**

Defendant contends that Ohio law applies to the parties' dispute because of the choice of law provision in the Mortgage. Defendant contends that Plaintiffs fail to allege a cause of action for breach of the implied covenant of good faith and fair dealing under Ohio or California law because, under either state's law, the implied covenant cannot be used to contradict the "express provision [in the Maturity Date Extension Agreement] that the decision to extend the maturity date is in Defendant's 'sole and absolute discretion.'" (Doc. # 11 at 3 (quoting Compl., Ex. A § 2(b), Doc. # 1)). Defendant contends that Plaintiffs' § 17200 claim "fails to state a claim because the choice of law provision in the parties' contract mandates that Ohio law applies. Even if California law were to apply in this case, Plaintiffs fail to allege facts establishing that Defendant's actions constitute 'unlawful,' 'unfair' or 'fraudulent' business practices." (Doc. # 5 at 6-7).

Plaintiffs contend that under California choice-of-law principles, California law applies to the parties' dispute. Plaintiffs contend that, under either California or Ohio law, the Complaint states a claim for breach of the implied covenant of good faith and fair dealing. Plaintiffs contend that a breach of the implied covenant of good faith and fair dealing can give

1  rise to a claim for violation of Section 17200. "To the extent the Court grants Defendant's
2  motion, Plaintiffs request leave to amend the complaint." (Doc. # 10 at 7).

**IV.    Discussion**

    **A.    Choice of Law**

It is undisputed that the agreements at issue are subject to a choice-of-law provision which states that Ohio law governs any dispute concerning the agreements. (Pascarella Decl., Ex. A at 25; *see also* Compl., Ex. A § 13, Doc. # 1; Pls.' Opp'n Br. at 2-3, Doc. # 10).

"It is well-settled that in diversity cases federal courts must apply the choice-of-law rules of the forum state." *Estate of Darulis v. Garate*, 401 F.3d 1060, 1062 (9th Cir. 2005) (quotation omitted). Under California law, a court must "evaluate the [choice-of-law] clause's enforceability pursuant to the analytical approach reflected in section 187, subdivision (2) of the Restatement Second of Conflict of Laws." *Wash. Mut. Bank, F.A. v. Superior Court*, 24 Cal. 4th 906, 916 (2001). The section "reflects a strong policy favoring enforcement of such provisions." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65 (1992). The California Supreme Court has stated:

> [T]he proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, ... the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a materially greater interest than the chosen state in the determination of the particular issue. If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

*Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (1992) (quotation omitted); *see also Omstead v. Dell, Inc.*, 594 F.3d 1081, 1086 (9th Cir. 2010) (same, applying California law). "[A] separate conflict of laws inquiry must be made with respect to each issue in the case." *Wash. Mut. Bank*, 24 Cal. 4th at 920.

Defendant is domiciled in Ohio. (Compl. ¶ 4, Doc. # 1). Accordingly, Ohio "has a substantial relationship to the parties or their transaction," and "there is [a] ... reasonable basis

1  for the parties' choice of law." *Nedlloyd*, 3 Cal. 4th at 466; *see id*. at 467 (a "substantial
2  relationship [is] present when one of the parties is domiciled in the chosen state" and "[i]f one
3  of the parties resides in the chosen state, the parties have a reasonable basis for their choice")
4  (quotations omitted).

5  The Court must next determine "whether the chosen state's law is contrary to a
6  fundamental policy of California." *Id*. at 466. In order to determine whether Ohio law is
7  contrary to a fundamental policy of California, the Court will determine whether the Complaint
8  states a claim under either Ohio law or California law.

9         **B.**       **Breach of Implied Covenant of Good Faith and Fair Dealing**

10 Under Ohio law, there is an implied duty of good faith in almost every contract. *See*
11 *Littlejohn v. Parrish*, 163 Ohio App. 3d 456, 462, 839 N.E.2d 49 (2005). The duty of good
12 faith requires the parties to deal reasonably with each other, and it applies where one party has
13 discretionary authority to determine certain terms of the contract. *See id*. at 463. However,
14 "[t]here can be no implied covenants in a contract in relation to any matter specifically covered
15 by the written terms of the contract itself." *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*,
16 86 Ohio St. 3d 270, 274, 714 N.E.2d 898 (1999). "[T]he implied covenant of good faith and
17 fair dealing does not apply where a party to the contract has the absolute and exclusive
18 authority to make the decision at issue." *DavCo Acquisition Holding, Inc. v. Wendy's Int'l,*
19 *Inc.*, No. 07cv1064, 2008 WL 755283, at *7 (S.D. Ohio, Mar. 19, 2008) (applying Ohio law)
20 (citing, *inter alia*, *Adams v. LCI Int'l Telecom Corp.*, No. 99AP-1199, 2000 WL 1006043, at
21 *2 (Ohio App., July 20, 2000) ("While we recognize that contracts may be subjected to an
22 implied duty of good faith, we decline to hold that such duty may be used to create an
23 obligation that is inconsistent with the express terms of the agreement.")); *cf. Aultman Hosp.*
24 *Ass'n v. Cmty. Mut. Ins. Co.*, 46 Ohio St. 3d 51, 54-55, 544 N.E.2d 920 (1989) ("In the absence
25 of fraud or mistake, the [plaintiffs]' unexpressed intention cannot be implied in the contract.
26 ... Where a contract is plain and unambiguous..., it does not become ambiguous by reason of
27 the fact that in its operation it may work a hardship upon one of the parties.").

28 Under California law, "[e]very contract imposes upon each party a duty of good faith

1  and fair dealing in its performance and its enforcement. ... The covenant of good faith finds
2  particular application in situations where one party is invested with a discretionary power
3  affecting the rights of another." *Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.
4  4th 342, 371-72 (1992) (quotation omitted). "The general rule regarding the covenant of good
5  faith is plainly subject to the exception that the parties may, by express provisions of the
6  contract, grant the right to engage in the very acts and conduct which would otherwise have
7  been forbidden by an implied covenant of good faith and fair dealing." *Id.* at 374 (quotation
8  omitted); *see also id.* ("We are aware of no reported case in which a court has held the
9  covenant of good faith may be read to prohibit a party from doing that which is expressly
10 permitted by an agreement."); *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App.
11 4th 44, 56 n.10 (2002) ("[T]he implied covenant of good faith and fair dealing does not impose
12 an affirmative duty on a party to forbear from enforcing rights expressly given under the
13 contract."). "[A]lthough it has been said the implied covenant finds 'particular application in
14 situations where one party is invested with a discretionary power affecting the rights of
15 another,' if the express purpose of the contract is to grant unfettered discretion, and the
16 contract is otherwise supported by adequate consideration, then the conduct is, by definition,
17 within the reasonable expectation of the parties and 'can never violate an implied covenant of
18 good faith and fair dealing.'" *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th
19 1107, 1120-21 (2008) (quoting *Carma*, 2 Cal. 4th at 376); *see also Oracle Corp. v. Falotti*, 319
20 F.3d 1106, 1112 (9th Cir. 2003) ("Courts are not at liberty to imply a covenant directly at odds
21 with a contract's express grant of discretionary power except in those relatively rare instances
22 when reading the provision literally would, contrary to the parties' clear intention, result in an
23 unenforceable, illusory agreement. In all other situations where the contract is unambiguous,
24 the express language is to govern, and no obligation can be implied which would result in the
25 obliteration of a right expressly given under a written contract.") (quoting *Third Story Music,*
26 *Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995)).

27      Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing
28 alleges that "Defendant has breached the covenant of good faith and fair dealing and acted to

1  deprive Plaintiffs of the extensions to the Mortgage identified in the Maturity Date Extension
2  Agreement, despite representations that the extensions would be granted." (Compl. ¶ 24, Doc.
3  # 1; *see also id.* ¶ 25 ("Defendant has breached the covenant of good faith and fair dealing and
4  acted to deprive Plaintiffs of the ability to extend the Mortgage, by demanding new exorbitant
5  payments completely out of line with the prior dealings between the parties.")).

6        The Maturity Date Extension Agreement expressly provides that the option to make
7  additional extensions of the maturity date lies in Defendant's "sole and absolute discretion."
8  (Compl., Ex. A § 1(b), Doc. # 1; *see also id.* § 13 ("The Loan Documents ... (as modified by
9  this Extension Agreement) constitute the entire agreement between the parties.... This
10 Extension Agreement supersedes all previous negotiations and discussions between the
11 parties.")).

12       Because the contract at issue expressly provides that Defendant has "sole and absolute
13 discretion" to extend the maturity date, and because there is no claim that the contract is not
14 supported by adequate consideration, under either Ohio or California law, a court is "not at
15 liberty to imply a covenant directly at odds with a contract's express grant of discretionary
16 power." *Third Story Music*, 41 Cal. App. 4th at 808; *see also DavCo Acquisition Holding*,
17 2008 WL 755283, at *7 ("Since Wendy's has the absolute unilateral authority under the
18 agreement to approve or disapprove suppliers, there is no basis for inferring a covenant of good
19 faith and fair dealing in this case.") (applying Ohio law); *Carma*, 2 Cal. 4th at 376
20 ("Marathon's termination of the lease in order to claim for itself appreciated rental value of the
21 premises was expressly permitted by the lease and was clearly within the parties' reasonable
22 expectations. In our view, such conduct can never violate an implied covenant of good faith
23 and fair dealing."); *Ed Schory & Sons, Inc. v. Soc'y Nat'l Bank*, 75 Ohio St. 3d 433, 443-44,
24 662 N.E.2d 1074 (Ohio 1996) ("Society's decision to enforce the written agreements cannot
25 be considered an act of bad faith. Indeed, Society had every right to seek judgment on the
26 various obligations owed to it by Francis and to foreclose on its security. ... Firms that have
27 negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of
28 their trading partners, without being mulcted for lack of 'good faith.' Although courts often

refer to the obligation of good faith that exists in every contractual relation, this is not an invitation to the court to decide whether one party ought to have exercised privileges expressly reserved in the document.") (quotation omitted). The Court concludes that, under either Ohio or California law, the Complaint fails to state a claim upon which relief can be granted for breach of the implied covenant of good faith and fair dealing. As to this issue, Ohio law is not contrary to a fundamental policy of California, and Ohio law will be applied. *See Nedlloyd*, 3 Cal. 4th at 466. Pursuant to Ohio law, the Motion to Dismiss the claim for breach of the implied covenant of good faith and fair dealing is granted.

### C. Unfair Competition Law

The Complaint's second claim alleges Defendant violated California's "Unfair Competition Law," Business and Professions Code § 17200, because "Defendant refuses to reasonably negotiate the maturity date extension in an effort to wrongfully profit from the Mortgage and interest off of the prior Maturity Date Extension Agreement." (Compl. ¶ 30, Doc. # 1; *see also id.* ¶ 29 ("Defendant's actions constitute unfair and fraudulent business practices, in that Defendant induced Plaintiffs to enter into the Maturity Date Extension Agreement with the understanding that the maturity date extension agreements would be granted, but now instead of granting or reasonably negotiating for a new maturity date extension in line with prior dealings between the parties, Defendant wrongfully demands exorbitant payments completely out of line with the prior dealings between the parties.")).

It is undisputed that there are "no Ohio laws directly analogous to California's Unfair Competition Laws." (Pls.' Opp'n Br., Doc. # 10 at 3; *see also* Def.'s Mot. Dismiss at 7, Doc. # 5). Plaintiffs contend that "California law should apply to actions seeking to protect California consumers, as Ohio does not have analogous laws, nor, an interest in having its laws applied." (Doc. # 10 at 4). Defendant contends that "[e]ven assuming, *arguendo*, that California law applies, as Plaintiffs assert, Plaintiffs do not state a claim for a violation of Section 17200 because they do not allege any practice that is 'unlawful,' 'unfair' or 'fraudulent.'" (Doc. # 11 at 5 (quoting Cal. Bus. & Prof. Code § 17200)).

California law prohibits unfair competition, defined as "any unlawful, unfair or

fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition–acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quoting Cal. Bus. & Prof. Code § 17200). "[I]n order to state a claim for unfair competition, [plaintiff] must first allege that [defendant's action] was unlawful, unfair or fraudulent." *In re Pomona Valley Med. Group Inc.*, 476 F.3d 665, 674 (9th Cir. 2007). The Complaint alleges that Defendant's actions were "unfair and fraudulent." (Doc. # 1 ¶¶ 29-32).

"In consumer cases, the [California] Supreme Court has not established a definitive test to determine whether a business practice is unfair." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256 (2010) (citing *Cel-Tech*, 20 Cal. 4th at 187 n.12). "Subsequent to the decision in *Cel-Tech*, a split of authority developed among the [California] Courts of Appeal, which have applied three different tests for unfairness in consumer cases." *Id.* (collecting cases). "The test applied in one line of cases requires that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the [Unfair Competition Law] must be tethered to specific constitutional, statutory, or regulatory provisions." *Id.* (quotation omitted). "The test applied in a second line of cases is whether the alleged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.* at 257 (quotation omitted). "The test applied in a third line of cases draws on the definition of 'unfair' in section 5 of the Federal Trade Commission Act, and requires that (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Id.* (quotation omitted).

Plaintiffs fail to allege specific facts in the Complaint which would demonstrate that any of these three "unfairness" tests are satisfied. In opposition to the Motion to Dismiss, Plaintiffs contend that this case is analogous to *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946

1  (N.D. Cal. 2009). In *Gutierrez*, the court stated:

> Where a bank has discretion under its agreement and that discretion is used to gouge consumers in violation of the covenant of good faith and fair dealing, then the unfair prong of Section 17200 applies. This unfairness is tethered to the legislative comment expressed under [Cal. Com. Code] Section 4303(b). The tethering requirement of *Cel-Tech*..., is satisfied.

*Id*. at 953 (citing Cal. Com. Code § 4303(b), Calif. cmt. 7 ("The only restraint on the discretion given to the payor bank under subsection (b) is that the bank act in good faith.")). *Gutierrez* is inapposite because Plaintiffs have failed to adequately allege a violation of the covenant of good faith and fair dealing, as discussed *supra*, and Plaintiffs have failed to "tether[] [the alleged unfair practice] to a legislatively declared policy or a showing of an actual or threatened impact on competition." *Id*.

"The term 'fraudulent' as used in section 17200 does not refer to the common law tort of fraud but only requires a showing members of the public 'are likely to be deceived.'" *Puentes v. Wells Fargo Home Mortgage, Inc.*, 160 Cal. App. 4th 638, 645 (2008) (quoting, *inter alia*, *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992)). The Complaint contains no allegation that members of the public are likely to be deceived by Defendant's actions. The Maturity Date Extension Agreement, which is attached to the Complaint, states that Defendant's right to extend the maturity date is at its "sole and absolute discretion." (Compl., Ex. A § 1(b), Doc. # 1). Although the Complaint alleges that "Defendant induced Plaintiffs to enter into the Maturity Date Extension Agreement with the understanding that the maturity date extension agreements would be granted," Compl. ¶ 29, Doc. # 1, the Maturity Date Extension Agreement contains an integration clause, which expressly provides that the Maturity Date Extension Agreement and loan documents constitute the "entire agreement between the parties" and "supersede all previous negotiations and discussions between the parties related to the subject matter hereof." (*Id*., Ex. A § 13; *see also id.* ("Borrower has consulted legal counsel of its choice to the extent desired in connection with this Extension Agreement and has jointly participated in the drafting of this Extension Agreement.")).

Because the parties agree that there are no Ohio laws directly analogous to California's Unfair Competition Law, and because the Complaint fails to adequately allege a claim for

1 violation of California's Unfair Competition Law, the Motion to Dismiss is granted.

**V.     Conclusion**

IT IS HEREBY ORDERED that the Motion to Dismiss is GRANTED. (Doc. # 5). The Complaint is DISMISSED without prejudice. No later than thirty (30) days from the date of this Order, Plaintiffs may file a motion for leave to amend the Complaint, accompanied by a proposed first amended complaint.

DATED:  September 8, 2010

                                                         **WILLIAM Q. HAYES**
                                                   United States District Judge